Richard P. Traulsen – State Bar #016050
**BEGAM MARKS & TRAULSEN, PA**
11201 North Tatum Blvd., Suite 110
Phoenix, AZ 85028
(602) 254-6071
Email: RTraulsen@bmt-law.com

Michael K. Johnson, Esq. (MN #0258696)
*Pro Hac Vice to be filed*
Kenneth W. Pearson, Esq. (MN #016088X)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: mjohnson@johnsonbecker.com
Email: kpearson@johnsonbecker.com
Email: akress@johnsonbecker.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Daniel Fisher,** an individual,<br><br>                    Plaintiff,<br><br>    v.<br><br><br>**Instant Brands, LLC,** an Illinois Limited Liability Company, **Instant Brands, Inc.,** a Delaware Corporation, and **Corelle Brands, LLC,** an Illinois Limited Liability Company,<br><br><br>                    Defendants. | Case No.:<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **Daniel Fisher** (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, **Johnson Becker, PLLC** and **Begam Marks & Traulsen, PA** hereby submits the following Complaint and Demand for Jury Trial against **Instant Brands, LLC, Instant Brands, Inc., and Corelle Brands, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Instant Brands Defendants design, manufacture, market, import, distribute and sell a wide range of consumer kitchen products, including the subject "Instant Pot Programmable Electric Pressure Cooker," that is at issue in this case.

2. Defendants tout the "safety"[1] of their pressure cookers, and state that they cannot be opened while in use. Despite Defendants' claims of "safety," they designed, manufactured, marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to their consumers.

3. Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and

---

[1] *See*, e.g. Instant Pot IP-DUO60/80 V2 Owner's manual, pgs. 4, 5, 8. A copy of the Owner's manual is attached hereto as "Exhibit A".

[19196-000/453335/1]　　　　　　　　2

COMPLAINT AND DEMAND FOR JURY TRIAL

other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing him serious and substantial bodily injuries and damages.

4.     Defendants knew or should have known of these defects but have nevertheless put profit ahead of safety by continuing to sell their pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like him.

5.     Defendants ignored and/or concealed their knowledge of these defects in their pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers.

6.     As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF DANIEL FISHER

7.     Plaintiff is a resident and citizen of the city of Cottonwood, County of Yavapai, State of Arizona.

8.     On or about September 5, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the

[19196-000/453335/1]                    3
COMPLAINT AND DEMAND FOR JURY TRIAL

pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

9. Defendants designed, manufactured, marketed, imported, distributed, and sold a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

10. Defendants boast that "cooking with Instant Brands is everyday magic,"[3] and that their products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

11. Instant Brands, LLC is an Illinois limited liability company with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of the State of Illinois.

12. Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of both the State of Illinois and the State of Delaware.

13. Corelle Brands, LLC is a Delaware limited liability company with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of the State of Illinois.

---

[2] *Id.* at pg. 5.
[3] *See* https://www.instanthome.com/about-us
[4] *Id.*

[19196-000/453335/1]                4
COMPLAINT AND DEMAND FOR JURY TRIAL

14.     On June 12, 2023, the Instant Brands Defendants commenced a Chapter 11 proceeding.  *See In re Instant Brands Acquisition Holdings Inc., et al.* (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024, the Bankruptcy Court issued a *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; *provided*, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect).  To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order).  The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess

COMPLAINT AND DEMAND FOR JURY TRIAL

Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15.    This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on October 4, 2023, and October 9, 2023 [Claim No. 0000010371] and [Claim No. 0000010544], respectively. This action is being initiated now in this District Court solely to ensure satisfaction of Plaintiff's applicable statute of limitation but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Arizona and have intentionally availed themselves of the markets within Arizona through the promotion, sale, marketing, and distribution of their products.

[19196-000/453335/1]                    6
COMPLAINT AND DEMAND FOR JURY TRIAL

## **FACTUAL BACKGROUND**

19.     Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cooker at issue in this litigation.

20.     Defendants aggressively warrant, market, advertise, and sell their pressure cookers as "Convenient, Dependable and Safe," [5] allowing consumers to cook "healthy, tasty dishes."[6]

21.     For instance, the Defendants claim that their pressure cookers include a "safety feature to disable the cooker" and display light that "flashes 'Lid' if the lid is not positioned correctly." [7]

22.     To further propagate their message, Defendants have, and continue to utilize numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers. For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your New Instant Pot IP-DUO":

    a.     "The first thing you need to know about your IP-DUO is that ***you don't need to be afraid of it***, as many people are afraid of stovetop pressure cookers."[8]

    b.     "With 10 safety features built in, you can use your Instant Pot with confidence, ***knowing that it is not going to explode***." [9]

---

[5] *See* https://instantpot.com/portfolio-item/lux-6-quart/#tab-id-1 (last accessed September 25, 2019).

[6] *Id.*

[7] Instant Pot IP-LUX50/60 Owner's manual, pg. 10,

[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42 – 0:46

[9] *Id.* at 0:47 – 0:55.

COMPLAINT AND DEMAND FOR JURY TRIAL

c.    "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use." [10]

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cookers "10 safety features,"[12] stating that this "new model detects the position of the lid"[13] and " once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*."[14]

24.    According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with "10 proven safety mechanisms and patented technologies,"[15] misleading the consumer into believing that the pressure cookers are reasonably safe for its normal, intended use.

25.    By reason of the forgoing acts or omissions, the above-named Plaintiff and/or his family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

---

[10] *Id.* 0:56 – 1:08. This apparently suggests that even if the lid is opened while the unit is still pressurized, it will not harm you.

[11] *See* https://www.hippressurecooking.com/

[12] *See* https://www.youtube.com/watch?v=bVA2EqPf0s0 at 1:22 – 143.

[13] *Id.* at 2:26

[14] *Id.* at 6:40

[15] *See* Instant Pot IP-DUO60/80 V2 Owner's Manual, pg. 4.

[19196-000/453335/1]                        8

26.     Plaintiff used his pressure cooker for its intended purpose of preparing meals for himself and/or family and did so in a manner that was reasonable and foreseeable by the Defendants.

27.     However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing Plaintiff, his family, and similar consumers in danger while using the pressure cookers.

28.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendants knew or should have known that their pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continue to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continue to generate a substantial profit from the sale of their pressure cookers.

[19196-000/453335/1]                 9
COMPLAINT AND DEMAND FOR JURY TRIAL

32.     As a direct and proximate result of Defendants' concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

33.     Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY

34.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

35.     At the time of Plaintiff's injuries, Defendants' pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

36.     Defendants' pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendants.

37.     Plaintiff and his family did not misuse or materially alter the pressure cooker.

38.     The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

39.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

[19196-000/453335/1]                    10
COMPLAINT AND DEMAND FOR JURY TRIAL

a. The pressure cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

e. Defendants failed to adequately test the pressure cookers; and

f. Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented Plaintiff's injuries and damages.

40. Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

41. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of their consumers and users of their pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems. Defendants' conduct demonstrated a conscious disregard that marketing and selling the pressure cooker created a substantial risk of serious harm to consumers and the public.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, including punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

[19196-000/453335/1]                    11
COMPLAINT AND DEMAND FOR JURY TRIAL

## SECOND CAUSE OF ACTION

### <u>NEGLIGENCE</u>

42.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

43.    Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for its intended uses by consumers, such as Plaintiff and his family.

44.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of their pressure cookers in that Defendants knew or should have known that said pressure cookers created a high risk of unreasonable harm to Plaintiff and consumers alike.

45.    Defendants were negligent in the design, manufacture, advertising, warning, marketing, and sale of their pressure cookers in that, among other things, they:

a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

b. Placed an unsafe product into the stream of commerce;

c. Aggressively over-promoted and marketed their pressure cookers through television, social media, and other advertising outlets; and

d. Were otherwise careless or negligent.

46.    Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market (and continue to do so) their pressure cookers to the general public.

47.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure

cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems. Defendants' conduct demonstrated a conscious disregard that marketing and selling the pressure cooker created a substantial risk of serious harm to consumers and the public.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, including punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

48.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

49.    Defendants expressly warranted that their pressure cookers were safe and effective to members of the consuming public, including Plaintiff and his family. Moreover, Defendants expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically:

a.   "As a safety feature, the lid is locked and won't open until the float valve drops down."[16]

b.   "Instant Pot® has a safety feature to disable the cooker and the display will flash "Lid" if the lid is not positioned correctly."[17]

c.   "Once the lid is locked, and the contents are under pressure, there's no way to open the pressure cooker."[18]

---

[16] *Id.* at pg. 9.

[17] *Id.* at 10.

[18] *See* https://www.youtube.com/watch?v=bVA2EqPf0s0 at 1:22 – 143.

50. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

51. Defendants marketed, promoted, and sold their pressure cookers as a safe product, complete with "safety measures."

52. Defendants' pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

53. Defendants breached their express warranties in one or more of the following ways:

a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendants were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b. Defendants failed to warn and/or place adequate warnings and instructions on their pressure cookers;

c. Defendants failed to adequately test their pressure cookers; and

d. Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

54. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

55. Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranties.

56. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure

[19196-000/453335/1]                14
COMPLAINT AND DEMAND FOR JURY TRIAL

cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems. Defendants' conduct demonstrated a conscious disregard that marketing and selling the pressure cooker created a substantial risk of serious harm to consumers and the public.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, including punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

57.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58.    At the time Defendants marketed, distributed, and sold their pressure cookers to the Plaintiff in this case, Defendants warranted that their pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

59.    Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the warranty.

60.    Plaintiff reasonably relied on Defendants' representations that their pressure cookers were a quick, effective, and safe means of cooking.

61.    Defendants' pressure cookers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

62.    Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

[19196-000/453335/1]                  15

63.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

64.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems. Defendants' conduct demonstrated a conscious disregard that marketing and selling the pressure cooker created a substantial risk of serious harm to consumers and the public.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, including punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

65.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

66.     Defendants manufactured, supplied, and sold their pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

67.     Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

68.     Defendants' pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with its use.

[19196-000/453335/1]                    16
COMPLAINT AND DEMAND FOR JURY TRIAL

69.    Plaintiff reasonably relied on Defendants' representations that their pressure cookers were a quick, effective, and safe means of cooking.

70.    Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

71.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems. Defendants' conduct demonstrated a conscious disregard that marketing and selling the pressure cooker created a substantial risk of serious harm to consumers and the public.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, including punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    That Plaintiff has a trial by jury on all of the claims and issues;

B.    That judgment be entered in favor of Plaintiff and against Defendants on all of the aforementioned claims and issues;

C.    That Plaintiff recover all damages against Defendants, general damages and special damages, including economic and non-economic, to compensate Plaintiff for his injuries and suffering sustained because of the use of the Defendants' defective pressure cooker;

D.    That all costs be taxed against Defendants;

E.    Punitive damages, according to proof;

F.    That prejudgment interest be awarded according to proof; and

[19196-000/453335/1]                17
COMPLAINT AND DEMAND FOR JURY TRIAL

G.    That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

Respectfully Submitted,

Dated: March 25, 2024

*/s/ Richard Traulsen*
Richard P. Traulsen – State Bar #016050
BEGAM MARKS & TRAULSEN, PA
11201 North Tatum Blvd., Suite 110
Phoenix, AZ 85028
(602) 254-6071
Email: RTraulsen@bmt-law.com

*In association with:*

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
Kenneth W. Pearson, Esq. (MN #016088X)
Adam J. Kress, Esq. (MN #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***

[19196-000/453335/1]                    18
COMPLAINT AND DEMAND FOR JURY TRIAL